**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| TRACY CUSICK, individually and on   behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>MARQUIS SOFTWARE SOLUTIONS, INC. and NORWAY SAVINGS BANK,<br><br>        Defendants. | Index No.: _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Tracy Cusick ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this Class Action Complaint against Marquis Software Solutions, Inc. ("Marquis") and Norway Savings Bank ("NSB") (collectively "Defendants"). Plaintiff alleges the following upon information and belief based on and the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

### INTRODUCTION

1.    Plaintiff and the proposed Class Members bring this class action lawsuit on behalf of all persons who entrusted Defendants with sensitive Personally Identifiable Information ("PII[1]" or "Private Information") that was impacted in a data breach experienced by Marquis on August 14, 2025 (the "Data Breach" or the "Breach").

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

2.      Plaintiff's claims arise from Defendants' failure to properly secure and safeguard Private Information that was entrusted to them, and their accompanying responsibility to store and transfer that information.

3.      Marquis is a marketing and compliance software and services provider that specializes in providing services to banks and credit unions ("Defendant's Clients" or "Clients"). One of these Clients is Defendant NSB. Over 700 banks and credit unions use Marquis' marketing and compliance solutions.[2]

4.      NSB is a leading mutual banking and financial services company headquartered in Norway, Maine, that was founded in 1866.[3]

5.      Defendants had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on their affirmative representations to Plaintiff and Class Members and through their privacy policies (hereinafter "Privacy Policies")[4,5], to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

---

[2] https://gomarquis.com/who-we-are/about-us (last visited Dec. 2, 2025).

[3] *About the Bank*, Norway Savings Bank, https://www.norwaysavings.bank/get-to-know-us/about-the-bank/ (last visited Dec. 2, 2025).

[4] *See Privacy Policy*, Marquis, https://gomarquis.com/privacy-policy ("We build security into our services in order to protect your information.  We use commercially reasonable and appropriate safeguards to secure and protect the privacy, accuracy, and reliability of your information and to protect it from unauthorized access, alteration, disclosure, or destruction.") (last visited Dec. 2, 2025).

[5] *See Norway Savings Bank Privacy Policy*, Norway Savings Bank, https://www.norwaysavings.bank/wp-content/uploads/2023/09/Privacy-Policy-2018_Web_PrintProtected_Final.pdf ("To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. We also maintain other physical, electronic and procedural safeguards to protect this information and we limit access to information to those employees for whom access is appropriate.") (last visited Dec. 2, 2025).

6.      On August 14, 2025, an unauthorized actor accessed Marquis's computer network and exfiltrated Plaintiff's and Class Members' Private Information from Marquis's systems. In response, cybersecurity experts were engaged to conduct a detailed review to determine the nature and scope of the Data Breach, and to determine if NSB customer information may have been included.[6]

7.      Upon information and belief, the Private Information compromised includes: names, addresses, dates of birth, Social Security numbers, tax identification numbers, and financial account information.[7]

8.      On or about November 17, 2025, Marquis issued a public disclosure about the Data Breach.

9.      On or about November 21, 2025, NSB began sending individualized Notice of Data Breach letters ("Notice") to those affected by the Data Breach.[8]

10.     Defendants failed to take precautions designed to keep individuals' Private Information secure.

11.     Defendants owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the Private Information collected safe and secure from unauthorized access. Defendants solicited, collected, used, and derived a benefit from their Private Information, yet breached their duty by failing to implement or maintain adequate security practices.

12.     The sensitive nature of the data maintained by Defendants and compromised in the Data Breach signifies that Plaintiff and Class Members have suffered irreparable harm. Plaintiff

---

[6] *See* Notice of Data Breach letter sent to Plaintiff by Defendant NSB, attached hereto as **Exhibit A**.
[7] Ex. A.
[8] *Id*.

and Class Members have lost the ability to control their Private Information and are subject to an increased risk of identity theft.

13.     Defendants, despite having the financial wherewithal and personnel necessary to prevent the Data Breach, nevertheless failed to use reasonable security procedures and practice appropriate to the nature of the sensitive, unencrypted information they collected and maintained for Plaintiff and Class Members, causing the exposure of Plaintiff's and Class Members' Private Information.

14.     Specifically, NSB failed to adequately vet and monitor Marquis, and ensure its data security practices were sufficient to protect Plaintiff's and the Class Members' Private Information.

15.     Marquis failed to maintain and implement adequate data security safeguards to protect the Private Information in its possession from unauthorized access.

16.     As a result of Marquis's inadequate digital security and notice process and NSB's negligent entrustment of the Private Information to Marquis, and failure to properly vet and monitor Marquis, Plaintiff's and Class Members' Private Information was exposed to criminals. Plaintiff and the Class Members have suffered and will continue to suffer injuries including: financial losses caused by misuse of their Private Information; the loss or diminished value of their Private Information as a result of the Data Breach; lost time associated with detecting and preventing identity theft; and theft of personal and financial information.

17.     Upon information and belief, Plaintiff's and Class Members' Private Information is available on the dark web as a result of the Data Breach.

18.     Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendants' collective failures to: (i) adequately protect the Private

Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendants'
inadequate information security practices; (iii) effectively secure hardware containing protected
Private Information using reasonable and adequate security procedures free of vulnerabilities and
incidents; and (iv) timely notify Plaintiff and Class Members of the Data Breach. Defendants'
conduct amounts to at least negligence and violates federal and state statutes.

19.     Plaintiff brings this action against Defendants for: negligence, negligence *per se*,
breach of implied contract, unjust enrichment, and breach of third-party beneficiary contract.

20.     Plaintiff seeks to remedy these harms and prevent any future data compromise on
behalf of herself and all similarly situated persons whose personal data was compromised and
stolen as a result of the Data Breach and who remain at risk due to Defendants' inadequate data
security practices.

## PARTIES

### Plaintiff

21.     Plaintiff is a citizen and resident of Naples, Maine.

### Defendant

22.     Defendant Marquis is a corporation with its principal place of business located at
6509 Windcrest Drive, Suite 170, Plano, Texas 75024 in the Sherman Division of the Eastern
District of Texas. The registered agent for service of process is C.T. Corporation System, 1999
Bryan Street, Suite 900, Dallas, Texas 75201. Defendant Marquis is a citizen of Texas.

23.     Defendant NSB is a corporation with its principal place of business located at 261
Main Street, Norway, Maine 04268. The registered agent for service of process is Daniel P. Walsh,
261 Main Street, Norway, Maine 04268. Defendant NSB is a citizen of Maine.

**JURISDICTION AND VENUE**

24.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) numerous Class Members are diverse from Defendants, and (4) there are more than 100 Class Members.

25.     The Court has general personal jurisdiction over Defendants because Defendant Marquis has its principal place of business in the Sherman Division of the Eastern District of Texas.

26.     Venue is proper in this District of Texas pursuant to 28 U.S.C. § 1391(b)(1) because Defendant Marquis's principal place of business is in the Sherman Division of the Eastern District of Texas, and much of the conduct alleged in this complaint is believed to have occurred in this Division and District.

**FACTUAL ALLEGATIONS**

A. **Background on Defendant**

27.     Defendant Marquis is a technology vendor serving hundreds of Clients.

28.     Defendant NSB is a banking and financial services company that is one of Marquis's Clients.

29.     Upon information and belief, and through their Privacy Policies, Defendants made promises and representations to their Clients and their customers, including Plaintiff and Class Members, that the Private Information collected from them would be kept safe and confidential, and that the privacy of that information would be maintained.

30.     Plaintiff and Class Members provided their Private Information to Defendants, either directly or indirectly, with the reasonable expectation and on the mutual understanding that

Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access.

31.     As a result of collecting and storing the Private Information of Plaintiff and Class Members for their own financial benefit, Defendants had a continuous duty to adopt and employ reasonable measures to protect Plaintiff's and the Class Members' Private Information from disclosure to third parties.

### B.  **The Data Breach**

32.     On August 14, 2025, an unauthorized actor accessed Marquis's  computer network and exfiltrated Plaintiff's and Class Members' Private Information from Marquis's systems.[9]

33.     Based on a subsequent forensic investigation, completed on October 27, 2025, it was determined that an unauthorized third party accessed Marquis's network and may have accessed and acquired certain files from Marquis's systems containing the Private Information of NSB's customers.[10]

34.     The Private Information compromised includes: names, addresses, dates of birth, Social Security numbers, tax identification numbers, and financial account information.[11]

35.     On or about November 17, 2025, Defendant Marquis issued a public disclosure about the Data Breach.

36.     On or about November 21, 2025, NSB began sending Notice to those affected by the Data Breach. The Notice stated the following:[12]

> **What Happened?** On August 14, 2025, a security incident occurred at a third-party data services provider of Norway Savings Bank during which an external actor/system obtained unauthorized access

---

[9] Ex. A.
[10] *Id*.
[11] *Id*.
[12] *Id*.

to certain portions of the provider's data environment. The incident did not involve NSB's own internal systems. Upon learning of the incident, NSB received regular updates from the affected provider regarding its incident response and investigation. Cybersecurity experts were engaged to conduct a detailed review that determined whether and what NSB customer information may have been included. This thorough investigation concluded on October 27, 2025, and we are now able to provide you with the full details contained in this letter.

**What Personal Information Was Involved?** The personal information that may have been unsecured during this breach are names, addresses, dates of birth, Social Security numbers, tax identification numbers, and financial account information. Norway Savings Asset Management Group accounts were not affected.

37.    This third-party data services provider was confirmed to be Marquis.

38.    Defendant NSB admits that information in Marquis's system was accessed by an unauthorized actor, though it has provided little information regarding how the Data Breach occurred.[13]

39.    Plaintiff's claims arise from Defendants' failure to safeguard Private Information provided by and belonging to Plaintiff and Class Members and failure to provide timely notice of the Data Breach.

40.    Defendants failed to take precautions designed to keep individuals' Private Information secure.

41.    While Defendants sought to minimize the damage caused by the Data Breach, it cannot and has not denied that there was unauthorized access to the sensitive Private Information of Plaintiff and Class Members.

42.    Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

---

[13] *Id.*

C. **Defendants' Failure to Prevent, Identify, and Timely Report the Data Breach**

43.    Defendant NSB admits that an unauthorized third party accessed Marquis's IT Network. Defendants failed to take adequate measures to protect Marquis's computer systems and Plaintiff's and Class Member's Private Information against unauthorized access.

44.    Defendant NSB failed to properly vet and monitor Marquis, and did not ensure Marquis implemented adequate data security safeguards to protect the highly sensitive Private Information that Plaintiff and Class Members provided.

45.    The Private Information that Defendants allowed to be exposed in the Data Breach is the type of private information that Defendants knew or should have known would be the target of cyberattacks.

46.    Defendants were not only aware of the importance of protecting the Private Information that they maintain, as alleged, they promoted their capability to do so.[14]

47.    Despite their own knowledge of the inherent risks of cyberattacks, and notwithstanding the FTC's data security principles and practices,[15] Defendants failed to disclose that Defendants' systems and security practices were inadequate to reasonably protect individuals' Private Information.

48.    The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[16] Immediate notification of a Data Breach is critical so that those impacted can take measures to protect themselves.

---

[14] *See* Privacy Policies.
[15] *Protecting Personal Information: A Guide for Business,* FED. TRADE COMM'N (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business. (last visited Dec. 2, 2025).
[16] *Id.*

49.     Here, Defendant NSB waited months before notifying impacted individuals about the Data Breach, and Defendant Marquis has not notified individuals at all.

**D.  Data Breaches Are Preventable**

50.     Defendant Marquis could have prevented this Data Breach by, among other things, properly encrypting or otherwise protecting its equipment and computer files containing Private Information, and Defendant NSB could have prevented this Data Breach by adequately vetting, monitoring, and verifying that Marquis's networks and privacy practices were sufficient to protect NSB's customers' Private Information.

51.     As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[17]

52.     To prevent and detect cyber-attacks, Defendants could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

---

[17] How to Protect Your Networks from RANSOMWARE, at 3, *available at:* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited Dec. 2, 2025).

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.
- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[18]

53.    To prevent and detect cyber-attacks or ransomware attacks, Defendants could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

-    Apply latest security updates
-    Use threat and vulnerability management
-    Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

-    Prioritize and treat commodity malware infections as potential full compromise;

---

[18] *Id.* at 3-4.

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

**Apply principle of least-privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events;

**Harden infrastructure**

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[19]

54.     Given that Defendants acquired and were storing the sensitive Private Information of Plaintiff and Class Members, Defendants could and should have implemented all of the above measures to prevent and detect cyberattacks.

55.     The occurrence of the Data Breach indicates that Defendants failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of the Private Information of, upon information and belief, tens of thousands of individuals, including that of Plaintiff and Class Members.

---

[19] *See Human-operated ransomware attacks: A preventable disaster* (Mar 5, 2020), available at: https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited Dec. 2, 2025).

E. **Defendant Acquires, Collects, and Stores Plaintiff's and Class Members' Private Information**

56.    In connection with the services Defendants provide, Plaintiff and Class Members were required to give their sensitive and confidential Private Information to Defendants.

57.    Defendants retain and store this information and derive a substantial economic benefit from the Private Information that they collect. But for the collection of Plaintiff's and Class Members' Private Information, Defendants would be unable to provide their services.

58.    By obtaining, collecting, and storing the Private Information of Plaintiff and Class Members, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting the Private Information from disclosure.

59.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and relied on Defendants to keep their Private Information confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

60.    Defendant Marquis could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the Private Information of Plaintiff and Class Members, and Defendant NSB could have prevented this Data Breach by adequately vetting, monitoring, and verifying that Marquis's networks and privacy practices were sufficient to protect NSB's customers' Private Information.

61.    Upon information and belief, and through their Privacy Policies, Defendants made promises to Plaintiff and Class Members to maintain and protect their Private Information, demonstrating an understanding of the importance of securing Private Information.

62.    Defendants' negligence in safeguarding the Private Information of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

**F.    <u>The Data Breach Was Foreseeable, and the Defendants Were Aware of Its Risk</u>**

63.    It is well known that Private Information, including names and Social Security numbers in particular, are invaluable commodities and a frequent target of hackers.

64.    In 2024, 3,158 data breaches occurred, exposing approximately 1,350,835,988 sensitive records—a 211% increase year-over-year.[20]

65.    Individuals place a high value not only on their Private Information, but also on the privacy of that data. For the individual, identity theft causes "significant negative financial impact on victims" as well as severe distress and other strong emotions and physical reactions.

66.    In light of recent high profile data breaches at other industry-leading companies, including, e.g., Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendants knew or should have known that the Private Information that it collected and maintained would be targeted by cybercriminals.

67.    Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

---

[20] *2024 Data Breach Report*, ITRC (Identity Theft Resource Center) (January 2025), *available at* https://www.idtheftcenter.org/publication/2024-data-breach-report/ (last accessed Dec. 2, 2025).

68.     Despite the prevalence of public announcements of data breach and data security compromises, Defendants failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

69.     Defendants were, or should have been, fully aware of the unique type and the significant volume of data on their server(s), and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

70.     In the Notice, NSB makes an offer for twelve months of identity monitoring services. This is wholly inadequate to compensate Plaintiff and Class Members as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft, financial fraud, and it entirely fails to provide sufficient compensation for the unauthorized release and disclosure of Plaintiff and Class Members' Private Information. Moreover, once this service expires, Plaintiff and Class Members will be forced to pay out of pocket for necessary identity monitoring services.[21]

71.     NSB's offering of credit and identity monitoring establishes that Plaintiff and Class Members' sensitive Private Information was in fact affected, accessed, compromised, and exfiltrated from Marquis's computer systems.

72.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

73.     The injuries to Plaintiff and Class Members were also directly and proximately caused by Defendant NSB's failure to properly vet, monitor, and audit Marquis and its data security measures.

---

[21] Ex. A.

15

74.    The ramifications of Defendants' failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Once Private Information is stolen fraudulent use of that information and damage to victims may continue for years.

75.    As entities in possession of Plaintiff's and Class Members' Private Information, Defendants knew, or should have known, the importance of safeguarding the Private Information entrusted to them by Plaintiff and Class Members and of the foreseeable consequences if their data security systems were breached. This includes the significant costs imposed on Plaintiff and Class Members because of a breach. Nevertheless, Defendants failed to take adequate cybersecurity measures to prevent the Data Breach.

G. **Defendant Fails to Comply with FTC Guidelines**

76.    The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

77.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. These guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[22]

78.    The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating

---

[22] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (2016), https://ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed Dec. 2, 2025).

someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[23]

79.     The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

80.     The FTC has brought enforcement actions against businesses like Defendants for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

81.     Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect Private Information.

82.     Defendants failed to properly implement basic data security practices.

83.     Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

---

[23] *Id.*

84.    Upon information and belief, Defendants were at all times fully aware of their obligation to protect the Private Information of Plaintiff and Class Members; Defendants were also aware of the significant repercussions that would result from their failure to do so. Accordingly, Defendants' conduct was particularly unreasonable given the nature and amount of Private Information they obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class Members.

H. **Defendants Fails to Comply with Industry Standards**

85.    As noted above, experts studying cyber security routinely identify companies in possession of Private Information as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

86.    Several best practices have been identified that, at a minimum, should be implemented by companies in possession of Private Information, like Defendants, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendants failed to follow these industry best practices, including a failure to implement and guarantee the implementation of multi-factor authentication.

87.    Other best cybersecurity practices that are standard include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendants failed to follow these cybersecurity best practices, including failure to train staff.

88.    Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

89.    These foregoing frameworks are existing and applicable industry standards for safeguarding data, and upon information and belief, Defendants failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

I.    **Defendants Owed Plaintiff and Class members a Duty to Safeguard their Private Information**

90.    In addition to their obligations under federal and state laws, Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems, networks, and protocols adequately protected the Private Information of Class Members.

91.    Defendants owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the Private Information in their possession, including adequately training their employees and others who accessed Private Information within their computer systems on how to adequately protect Private Information.

92.    Defendant NSB owed a duty to Plaintiff and Class Members to properly vet, monitor, and audit Marquis and ensure its data security measures were sufficient to protect the Private Information.

93.    Defendants owed a duty to Plaintiff and Class Members to implement processes that would detect a compromise of Private Information in a timely manner.

94.    Defendants owed a duty to Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

95.    Defendants owed a duty to Plaintiff and Class Members to disclose in a timely and accurate manner when and how the Data Breach occurred.

96.    Defendants owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

**J.    The Harm Caused by the Data Breach Now and Going Forward**

97.    Victims of data breaches are susceptible to becoming victims of identity theft. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 17 C.F.R. § 248.201(9). When "identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[24]

98.    The types of data that may have been accessed and compromised here can be used to perpetrate fraud and identity theft.

99.    Plaintiff and Class Members face a substantial risk of identity theft given that their Private Information was compromised in the Data Breach.

---

[24] *Prevention and Preparedness*, New York State Police, https://troopers.ny.gov/prevention-and-preparedness  (last visited Dec. 2, 2025).

100.    Stolen Private Information is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines. Law enforcement has difficulty policing the "dark web" due to this encryption, which allows users and criminals to conceal their identities and online activity.

101.    When malicious actors infiltrate companies and copy and exfiltrate the Private Information that those companies store, the stolen information often ends up on the dark web where malicious actors buy and sell that information for profit.[25]

102.    For example, when the U.S. Department of Justice announced their seizure of AlphaBay—the largest online "dark market"—in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or fraudulent documents that could be used to assume another person's identity."[26] Marketplaces similar to the now-defunct AlphaBay continue to be "awash with [PII] belonging to victims from countries all over the world."[27]

103.    PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[28] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[29]

---

[25] *Shining a Light on the Dark Web with Identity Monitoring*, IDENTITYFORCE (Dec. 28, 2020) https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring (last visited Dec. 2, 2025).
[26] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, ARMOR (April 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/  (last visited Dec. 2, 2025).
[27] *Id.*
[28] *Id.*
[29] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015) https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited  Dec. 2, 2025).

104.    According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.[30]

105.    Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[31] Defendants did not rapidly report to Plaintiff and Class Members that their Private Information had been stolen.

106.    As a result of the Data Breach, the Private Information of Plaintiff and Class Members has been exposed to criminals for misuse. The injuries suffered by Plaintiff and Class Members, or likely to be suffered as a direct result of Defendants' Data Breach, include: (a) theft of their Private Information; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of this Breach; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft resulting from their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damage to and diminution in value of their personal data entrusted to Defendants with the mutual understanding that Defendants would safeguard their Private Information against theft and not allow access to and misuse of their personal data by any unauthorized third party; and (h) the continued risk to their Private Information, which remains in the possession of Defendants, and which is subject to further

---

[30] *2019 Internet Crime Report Released*, FBI (Feb. 11, 2020)
https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120#:~:text=IC3%20received%20467%2C361%20complaints%20in,%2Ddelivery%20scams%2C%20and%20extortion (last visited Dec. 2, 2025).
[31] *Id.*

injurious breaches so long as Defendants fail to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

107.    In addition to a remedy for economic harm, Plaintiff and Class Members maintain an interest in ensuring that their Private Information is secure, remains secure, and is not subject to further misappropriation and theft.

108.    Defendants disregarded the rights of Plaintiff and Class Members by (a) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that their network servers were protected against unauthorized intrusions; (b) failing to disclose that Defendants did not have adequately robust security protocols and training practices in place to safeguard Plaintiff's and Class Members' Private Information; (c) failing to take standard and reasonably available steps to prevent the Data Breach; (d) concealing the existence and extent of the Data Breach for an unreasonable duration of time; (e) failing to adequately supervise their third-party data vendors and failing to ensure Marquis's network was adequately secured; and (f) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

109.    The actual and adverse effects to Plaintiff and Class Members, including the imminent, immediate, and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly or proximately caused by Defendants' wrongful actions and/or inaction and the resulting Data Breach require Plaintiff and Class Members to take affirmative acts to recover their peace of mind and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial

accounts, for which there is a financial and temporal cost. Plaintiff and other Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

### K. Loss of Time to Mitigate the Risk of Identity Theft and Fraud

110.    As a result of the recognized risk of identity theft, when a data breach occurs and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft or fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm.

111.    Due to the actual and imminent risk of identity theft, Plaintiff and Class Members must monitor their financial accounts for many years to mitigate the risk of identity theft.

112.    Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as changing passwords and resecuring their own computer systems.

113.    Plaintiff's mitigation efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[32]

114.    Plaintiff's mitigation efforts are also consistent with the steps the FTC recommends data breach victims take to protect their personal and financial information after a

---

[32] *See* United States Government Accountability Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), https://www.gao.gov/new.items/d07737.pdf (last accessed Dec. 2, 2025).

data breach, including: contacting one of the credit bureaus to place a fraud alert (and considering an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[33]

115.    And for those Class Members who experience actual identity theft and fraud, the United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."

L.    **Diminution of Value of Private Information**

116.    Private Information is valuable property.[34] Its value is axiomatic, considering the value of Big Data in corporate America and that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk-to-reward analysis illustrates, beyond doubt, that Private Information has considerable market value.

117.    The Private Information stolen in the Data Breach is significantly more valuable than the loss of, say, credit card information in a large retailer data breach. Victims affected by those retailer breaches could avoid much of the potential future harm by simply cancelling credit or debit cards and obtaining replacements. The information stolen in the Data Breach is difficult, if not impossible, to change – name and Social Security number.

118.    This kind of data, as one would expect, demands a much higher price on the dark web. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit

---

[33] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps (last accessed Dec. 2, 2025).

[34] *See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," at 2, U.S. Government Accountability Office, June 2007, https://www.gao.gov/new.items/d07737.pdf (last accessed Dec. 2, 2025) ("GAO Report").

card information, personally identifiable information . . . [is] worth more than 10x on the black market."[35]

119.    Sensitive Private Information can sell for as much as $363 per record according to the Infosec Institute.[36]

120.    An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[37] In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[38,39] Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50 a year.[40]

121.    As a result of the Data Breach, Plaintiff's and Class members' Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an

---

[35] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT WORLD (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hackpersonal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Dec. 2, 2025).

[36] *See, e.g.*, John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("Private Information") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("Private Information, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[37] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last accessed Dec. 2, 2025).

[38]  https://Riverbay.latimes.com/business/story/2019-11-05/column-data-brokers (last accessed Dec. 2, 2025).

[39] https://datacoup.com/ (last accessed Dec. 2, 2025).

[40] https://www.thepennyhoarder.com/make-money/nielsen-panel/#:~:text=Sign%20up%20to%20 join%20the,software%20installed%20on%20your%20computer (last accessed Dec. 2, 2025)

economic loss. Moreover, the Private Information is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

122.    The fraudulent activity resulting from the Data Breach may not come to light for years.

123.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class Members are incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

124.    Defendants were, or should have been, fully aware of the unique type and the significant volume of data on Marquis's network.

125.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

**M.  The Future Cost of Credit and Identity Theft Monitoring is Reasonable and Necessary**

126.    Given the type of targeted attack in this case, the sophisticated criminal activity, the volume of data compromised in this Data Breach, and the sensitive type of Private Information involved in this Data Breach, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes—*e.g.*, opening bank accounts in the victims' names to make purchases or to launder money; file false tax returns; take out loans or lines of credit; or file false unemployment claims.

127.    Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that his or her Private Information was used to file

for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

128.    Consequently, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

129.    The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is a reasonable and necessary cost to monitor and protect Class Members from the risk of identity theft resulting from Defendants' Data Breach. This is a future cost for a minimum of five years that Plaintiff and Class Members would not need to bear, but for Defendants' failure to safeguard their Private Information.

## N.    **Loss of the Benefit of the Bargain**

130.    Furthermore, Defendants' poor data security deprived Plaintiff and Class Members of the benefit of their bargain. When agreeing to provide their Private Information, Plaintiff and other reasonable Class Members understood and expected that they were, in part, exchanging their Private Information for Defendants' services and necessary data security to protect the Private Information when, in fact, Defendants did not provide the expected data security. Accordingly, Plaintiff and Class Members received services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendants.

## O.    **Plaintiff's Experience**

131.    Plaintiff is a customer of Defendant NSB.

132.    As a condition of receiving services from Defendant NSB, Plaintiff was required to supply Defendant NSB with her Private Information—including her name, address, date of birth, Social Security number, tax identification number, and financial account information.

133.    Upon information and belief, Defendant NSB provided Defendant Marquis with Plaintiff's Private Information.

134.    Defendants were in possession of Plaintiff's Private Information before, during and after the Data Breach.

135.    Plaintiff reasonably understood and expected that Defendants would safeguard her Private Information and timely and adequately notify her in the event of a data breach. Plaintiff would not have allowed Defendants, or anyone in Defendants' position, to maintain her Private Information if she believed that Defendants would fail to implement reasonable and industry standard practices to safeguard that information from unauthorized access.

136.    Plaintiff greatly values her privacy and Private Information and takes reasonable steps to maintain the confidentiality of her Private Information. Plaintiff is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

137.    Plaintiff stores any and all documents containing Private Information in a secure location and destroys any documents she receives in the mail that contain any Private Information or that may contain any information that could otherwise be used to compromise her identity and credit card accounts. Moreover, she diligently chooses unique usernames and passwords for her various online accounts.

138.    As a result of the Data Breach, Plaintiff has spent considerable time researching the Data Breach, reviewing her bank accounts, monitoring her credit report, changing her passwords and other necessary mitigation efforts. This is valuable time that Plaintiff spent at Defendant NSB's direction and that she otherwise would have spent on other activities, including but not limited to work and/or recreation.

139.    The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress that her Private Information may be misused.

140.    In fact, Plaintiff's Private Information has already been misused, as an unknown individual made multiple unauthorized charges on Plaintiff's debit card following the Data Breach. As a result, Plaintiff had to contact her financial institution to receive a new debit card on more than one occasion.

141.    Plaintiff has already spent, and anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff will continue to be at present and continued increased risk of identity theft and fraud for years to come.

142.    Plaintiff has a continuing interest in ensuring that her Private Information, which upon information and belief, remains in Defendants' possession, is protected and safeguarded from future breaches.

143.    As a direct and traceable result of the Data Breach, Plaintiff suffered actual injury and damages after her Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring her accounts and credit reports for fraudulent activity; (b) loss of privacy due to her Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of the bargain because Defendants did not adequately protect her Private Information; (d) emotional distress because identity thieves now possess her first and last name paired with her Social Security number and other sensitive information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that her Private Information has been stolen and likely published on the dark

web; (f) diminution in the value of her Private Information, a form of intangible property that Defendants obtained from Plaintiff; and (g) other economic and non-economic harm.

## CLASS ALLEGATIONS

144.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks certification of the following class:

> All persons whose Private Information was impacted by the Data Breach
> announced by Defendants (the "Class").

145.    Specifically excluded from the Class are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

146.    Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

147.    This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

148.    Numerosity: The Class is so numerous that joinder of all Class Members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendants, upon information and belief, Plaintiff estimates that the Class is comprised of thousands of Class Members, if not more. The Class is sufficiently numerous to warrant certification.

149.    Typicality of Claims: Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the unnamed Class, had her Private Information compromised as a result

of the Data Breach. Plaintiff is a member of the Class, and her claims are typical of the claims of the members of the Class. The harm suffered by Plaintiff is similar to that suffered by all other Class Members which was caused by the same misconduct by Defendants.

150.    <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

151.    <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendants will likely continue their wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for their wrongdoing as asserted herein.

152.    <u>Predominant Common Questions</u>: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including:

    a.  Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    b.  Whether Defendant Marquis's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

c.   Whether Defendant Marquis's storage of Plaintiff's and Class Member's Private Information was done in a negligent manner;

d.   Whether Defendant NSB failed to properly vet, audit, and monitor Marquis and ensure its data security measures were sufficient to protect Plaintiff's and Class Members' Private Information;

e.   Whether Defendants had a duty to protect and safeguard Plaintiff's and Class Members' Private Information;

f.   Whether Defendants' conduct was negligent;

g.   Whether Defendants' conduct violated Plaintiff's and Class Members' privacy;

h.   Whether Defendants' conduct violated the statutes as set forth herein;

i.   Whether Defendants took sufficient steps to secure individuals' Private Information;

j.   Whether Defendants were unjustly enriched; and

k.   The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

153.    Information concerning Defendants' policies is available from Defendants' records.

154.    Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

155.    The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct

for Defendants. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

156.    Given that Defendants had not indicated any changes to their conduct or security measures, monetary damages are insufficient and there is no complete and adequate remedy at law.

## CAUSES OF ACTION
### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

157.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 156 as though fully set forth herein.

158.    Plaintiff brings this claim individually and on behalf of the Class Members.

159.    Defendants knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

160.    Defendants had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' Private Information.

161.    Defendants had, and continue to have, a duty to timely disclose that Plaintiff's and Class Members' Private Information within their possession was compromised and precisely the types of information that were compromised.

162.    Defendants owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards, applicable standards of care from statutory authority like Section 5 of the FTC Act, and other requirements discussed herein, and to ensure that their

systems and networks, and the personnel responsible for them, adequately protected individuals' Private Information.

163.    Defendant NSB also owed a duty of care to Plaintiff and Class Members to adequately vet, audit and monitor Marquis, and to ensure its data security measures were sufficient to protect Plaintiff's and Class Members' Private Information.

164.    Defendants' duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendants and Plaintiff and Class Members. Defendants were in a position to ensure that their systems and procedures were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members from a data breach.

165.    Defendants' duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendants are bound by industry standards to protect confidential Private Information.

166.    Defendants breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Private Information.

167.    The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

  a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Private Information;

  b.  Failing to adequately monitor the security of Defendant Marquis's networks and systems;

  c.  Failing to periodically ensure that Defendant Marquis's computer systems and networks had plans in place to maintain reasonable data security safeguards; and

  d.  Defendant NSB failing to adequately supervise and ensure that its third-party vendor Defendant Marquis had adequate data security measures in place to protect Plaintiff's and Class Members' Private Information.

168.    Defendants, through their actions and/or omissions, unlawfully breached their duties to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within Defendants' possession.

169.    Defendants, through their actions and/or omissions, unlawfully breached their duties to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class Members' Private Information.

170.    Defendants, through their actions and/or omissions, unlawfully breached their duty to timely disclose to Plaintiff and Class Members that the Private Information within Defendants' possession might have been compromised and precisely the type of information compromised.

171.    Defendants breached the duties set forth in 15 U.S.C. § 45, the FTC guidelines, the National Institute of Standards and Technology's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. In violation of 15 U.S.C. § 45, Defendants failed to implement proper data security procedures to adequately and reasonably protect Plaintiff's and Class Members' Private Information. In violation of the FTC guidelines, *inter alia,* Defendants did not protect the Private Information they keep; failed to properly dispose of personal information that was no longer needed; failed to encrypt information stored on computer networks; lacked the requisite understanding of Defendant Marquis's networks' vulnerabilities; and failed to implement or ensure adequate policies were in place to correct security issues.

172.    It was foreseeable that Defendants' failure to use reasonable measures to protect Plaintiff's and Class Members' Private Information would result in injury to Plaintiff and Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

173.    It was foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' Private Information would result in injuries to Plaintiff and Class Members.

174.    Defendants' breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Private Information to be compromised.

175.    But for Defendants' negligent conduct and breach of the above-described duties owed to Plaintiff and Class Members, their Private Information would not have been compromised.

176.    As a result of Defendants' failure to timely notify Plaintiff and Class Members that their Private Information had been compromised, Plaintiff and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

177.    As a result of Defendants' negligence and breach of duties, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes, and Plaintiff and Class Members have and will suffer damages including: a substantial increase in the likelihood of identity theft; the compromise, publication, and theft of their personal information; loss of time and costs associated with the prevention, detection, and recovery from unauthorized use of their personal information; the continued risk to their personal information; future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the personal information compromised as a result of the Data Breach; and overpayment for the services or products that were received without adequate data security.

**COUNT II**

**NEGLIGENCE *PER SE***
**(On Behalf of Plaintiff and the Class)**

178.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 156, as though fully set forth herein.

179.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Defendants of failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information. Various FTC publications and orders also form the basis of Defendants' duty.

180.    Defendants violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information and by failing to comply with industry standards.

181.    Defendants' conduct was particularly unreasonable given the nature and amount of Private Information obtained and stored and the foreseeable consequences of a data breach on Defendant Marquis's systems.

182.    Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) were intended to protect.

183.    Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

184.    As a result of Defendants' negligence, Plaintiff and Class Members have been harmed and have suffered damages including, but not limited to: damages arising from identity theft and fraud; out-of-pocket expenses associated with procuring identity protection and restoration services; increased risk of future identity theft and fraud, and the costs associated therewith; and time spent monitoring, addressing, and correcting the current and future consequences of the Data Breach.

## COUNT III
## BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Class)

185.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 156, as though fully set forth herein.

186.    Defendant NSB entered into contracts with customers, including Plaintiff and many Class Members, to provide banking services in exchange for consideration. These services included providing adequate data security practices, procedures, and protocols sufficient to safeguard the Private Information that was entrusted to NSB.

187.    Plaintiff and Class Members who were or are customers of NSB are parties to such contracts, as it was their Private Information that NSB agreed to receive, store, utilize, transfer, and protect through its services. The benefit of collection and the protection of the Private Information belonging to Plaintiff and the Class Members who were or are customers of NSB was a direct and primary objective of the contracting parties.

188.    NSB knew that if it were to breach these contracts with its customers, Plaintiff and Class Members would be harmed.

189.    NSB breached its contracts with customers by, among other things, failing to properly vet, audit, and monitor Marquis to ensure it adequately secure Plaintiff's and Class

Members' Private Information, and, as a result, Plaintiff and Class Members were harmed by NSB's failure to secure their Private Information.

190.    As a direct and proximate result of NSB's breach, Plaintiff and Class Members are at a current and ongoing risk of identity theft, and Plaintiff and Class Members sustained incidental and consequential damages including: (i) financial "out of pocket" costs incurred mitigating the materialized risk and imminent threat of identity theft; (ii) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (iii) financial "out of pocket" costs incurred due to identity theft; (iv) loss of time incurred due to identity theft; (v) loss of time due to increased spam and targeted marketing emails; (vi) diminution of value of their Private Information; (vii) future costs of identity theft monitoring; (viii) and the continued risk of their Private Information, which remains in Defendants control, and which is subject to further breaches, so long as each Defendants fail to undertake appropriate or adequate measures to protect Plaintiff's and Class Members' Private Information.

191.    Plaintiff and Class Members' are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

## COUNT IV
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

192.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 156, as though fully set forth herein.

193.    Plaintiff and Class Members conferred a monetary benefit on Defendants. Specifically, they provided Defendants with their Private Information. In exchange, Plaintiff and Class Members should have had their Private Information protected with adequate data security.

194.    Defendants knew that Plaintiff and Class Members conferred a benefit upon them and they accepted and retained that benefit by accepting and retaining the Private Information entrusted to them. Defendants profited from Plaintiff's retained data and used Plaintiff's and Class Members' Private Information for business purposes.

195.    Defendants failed to secure Plaintiff's and Class Members' Private Information and, therefore, did not fully compensate Plaintiff or Class Members for the value that their Private Information provided.

196.    Defendants acquired the Private Information through inequitable record retention as they failed to investigate and/or disclose the inadequate data security practices previously alleged.

197.    If Plaintiff and Class Members had known that Defendants would not use adequate data security practices, procedures, and protocols to adequately monitor, supervise, and secure their Private Information, they would not have entrusted their Private Information to Defendants.

198.    Plaintiff and Class Members have no adequate remedy at law.

199.    Defendants enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendants instead calculated to increase their own profit at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures and diverting those funds to their own profit. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' decision to prioritize their own profits over the requisite security and the safety of their Private Information.

200.    Under the circumstances, it would be unjust for Defendants to be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon them.

201.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information.

202.    Plaintiff and Class Members may not have an adequate remedy at law against Defendants, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

### COUNT V
### BREACH OF THIRD PARTY BENEFICIARY CONTRACT
#### (On Behalf of Plaintiff and the Class)

203.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 156, as though fully set forth herein.

204.    Marquis entered into contracts, written or implied, with its Clients to perform services. Upon information and belief, these contracts are virtually identical between and among

42

Marquis and its Clients around the country whose customers, including Plaintiff and Class Members, were affected by the Data Breach.

205.    In exchange, Marquis agreed, in part, to implement adequate security measures to safeguard the Private Information of Plaintiff and the Class.

206.    These contracts were made expressly for the benefit of Plaintiffs and the Class, as Plaintiff and Class Members were the intended third-party beneficiaries of the contracts entered into between Marquis and its Clients. Marquis knew that if it were to breach these contracts with its Clients, its Clients' customers—Plaintiff and Class Members—would be harmed.

207.    Marquis breached the contracts it entered into with its Clients by, among other things, failing to (i) use reasonable data security measures, (ii) implement adequate protocols and employee training sufficient to protect Plaintiff's Private Information from unauthorized disclosure to third parties, and (iii) promptly and adequately detect the Data Breach and notify Plaintiff and Class Members thereof.

208.    Plaintiff and the Class were harmed by Marquis's breach of its contracts with its Clients, as such breach is alleged herein, and are entitled to the losses and damages they have sustained as a direct and proximate result thereof.

209.    Plaintiff and Class Members are also entitled to their costs and attorney's fees incurred in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

(a)     For an order determining that this action is properly brought as a class action and certifying Plaintiff as the representative of the Class and her counsel as Class Counsel;

(b)     For an order declaring that Defendants' conduct violates the laws referenced herein;

(c)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)     For damages in amounts to be determined by the Court and/or jury;

(e)     For an award of statutory damages or penalties to the extent available;

(f)     For pre-judgment interest on all amounts awarded;

(g)     For an order of restitution and all other forms of monetary relief; and

(h)     Such other and further relief as the Court deems necessary and appropriate.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: December 2, 2025                    Respectfully submitted,

By: */s/Andrew J. Shamis*
    Andrew J. Shamis (TX Bar No. 24124558)
    Leanna A. Loginov
    **SHAMIS & GENTILE, P.A.**
    14 NE 1st Avenue, Suite 705
    Miami, FL 33132
    Telephone: (305) 479-2299
    ashamis@shamisgentile.com
    lloginov@shamisgentile.com

    *Counsel for Plaintiff and the Proposed Class*